**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| EDMUND W. MARTIN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-00460-TWP-TAB |
| | ) | |
| JOE GORAJEC, | ) | |
| TERRY RICHWINE, | ) | |
| SARAH MCNAUGHT, | ) | |
| JOE DAVIS, | ) | |
| RANDY KLOPP, | ) | |
| LIANE PUCCIA, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ENTRY**</u>

This matter is before the Court on the parties' numerous motions, including Defendants

Joe Davis's ("Mr. Davis") and Randy Klopp's ("Mr. Klopp") joint Motion to Dismiss (Dkt. 13),

Defendant Liane Puccia's ("Ms. Puccia") Motion to Dismiss (Dkt. 25), Plaintiff Edmund

Martin's ("Mr. Martin") Motion for Leave to File an Amended Complaint (Dkt. 50), and Mr.

Martin's Motion to Stay under Rule 56(d) (Dkt. 70). As Defendants Mr. Davis and Mr. Klopp

summarize, Mr. Martin "seems determined to drag this case into the weeds and tie it up in

procedural knots." Dkt. 73 at 1. In this Entry, the Court untangles those knots and will address

the outstanding motions in turn.

**I. <u>BACKGROUND</u>**

**A.     Factual History**

The following relevant factual allegations are made in the Complaint (Dkt.1), Mr.

Martin's affidavit (Dkt. 35), and Mr. Davis's and Mr. Klopp's statement of material facts not in

dispute (Dkt. 44).

Mr. Martin has been engaged in the business of breeding thoroughbred race horses in Indiana and Florida.  Since at least December 2008, Mr. Martin has been actively involved in supporting and advocating for legal and legislative matters concerning horse racing in Indiana. In March 2009, Mr. Martin was elected to the Board of Directors of the Indiana Thoroughbred Owners and Breeders Association, Inc. ("ITOBA"), an Indiana nonprofit trade association representing the interests of Indiana thoroughbred owners and breeders.  Mr. Martin was also elected as 1st Vice President of ITOBA.

In June 2009, Mr. Martin was critical of the Indiana Horseman's Benevolent & Protective Association, Inc. ("IHBPA"), an organization which represents thoroughbred horsemen in the State of Indiana and competes for funding from the Indiana Horse Racing Commission ("IHRC") with ITOBA.  Mr. Martin lobbied against Mr. Klopp's election as president of IHBPA which created "lingering ill will between the two organizations."  Dkt. 44 at 4.

In October 2009, Mr. Martin was hired as ITOBA's Executive Director.  Mr. Martin continued advocating in his individual capacity and as a representative of ITOBA throughout 2009 and 2010.  Mr. Martin's views were directly adverse to those of Defendants, IHRC, IHRC Executive Director Joe Gorajec ("Mr. Gorajec"), and Sarah McNaught ("Ms. McNaught").

Relations between Mr. Martin, IHRC, Mr. Gorajec, and Ms. McNaught became "especially acrimonious" in late 2009 and early 2010.  Dkt. 1 at 3.  Specifically, Mr. Martin initiated a June 2009 inquiry as to why IHRC had not taken adequate steps to protect purse funds owed to horsemen, but instead permitted race track owners to comingle such funds with the tracks' general operating funds, even while such tracks were at risk of financial insolvency or bankruptcy.  In January 2010, Mr. Martin successfully lobbied against legislation supported by Mr. Gorajec and Ms. McNaught, which would have eliminated statutory breed development

advisory committees.   Then, beginning in March 2010, Mr. Martin and other ITOBA representatives began discussions with Indiana State Senator Luke Kenley about the negative economic impact of proposed changes to horse racing purse structures and other policies advanced by IHRC, Mr. Gorajec, and Ms. McNaught.

Senator Kenley held a meeting on April 6, 2010 with Mr. Martin, Mr. Gorajec, Ms. McNaught, IHRC legal counsel Robin Babbitt, Indiana Downs General Manager Jon Schuster, Special Assistant to the Governor Sebastian Smelko, IHBPA Vice President Larry Smallwood, and Thoroughbred Development Advisory Committee Chair Jim Hartman.  At the meeting Ms. McNaught "expressed outrage" at the legal advocacy initiatives of Mr. Martin and ITOBA, as well as the media coverage for the same issues initiated by Mr. Martin.  Dkt. 1 at 4.  Though he was not present at the April 6, 2010 meeting, in April 2010, Mr. Davis was a member of IHBPA's board of directors and was a licensed Indiana horse trainer.  During the same time, Mr. Klopp was president of the IHBPA and a licensed Indiana horse trainer.

On April 7, 2010, Ms. Puccia, a veterinarian, sent written correspondence (the "Puccia correspondence" or "correspondence") to Mr. Davis and Mr. Klopp alleging that Mr. Martin was responsible for various criminal acts of abuse and neglect of horses at Martin Stables South. This correspondence was sent at the request of Mr. Gorajec.  Also on April 7, 2010, Mr. Davis and Mr. Klopp forwarded the correspondence to Mr. Gorajec.

Then, on April 8, 2010, the IHRC instructed Mr. Martin to apply for a 2010 IHRC license. Mr. Martin, believing that his activities on behalf of ITOBA did not constitute "participation in racing" within the meaning of Indiana Code section 4-31-6-1(b)—which would require him to be licensed—never applied for a license from IHRC.[1]

---

[1] In May 2012, a Marion County, Indiana court ruled that Mr. Martin had not participated in horse racing within the meaning of the Indiana Code and, therefore, the IHRC could not require him to be licensed.

Thereafter, on April 9, 2010, IHRC initiated an investigation into Mr. Martin's thoroughbred breeding operation located in Florida.  The breeding operation is known as Martin Stables South.  Mr. Martin alleges that IHRC, Ms. McNaught, Mr. Gorajec, as well as Defendants Terry Richwine, Mr. Davis, Mr. Klopp, and Ms. Puccia "conspired to fabricate the basis for, and initiate, the Investigation for the unlawful purposes of retaliating against Mr. Martin for his various legal and advocacy initiatives and in order to prevent Mr. Martin, by threat and intimidation, from engaging in any further legal and advocacy initiatives concerning horse racing in Indiana."  Dkt. 1 at 5.  On April 12, 2010, Mr. Richwine entered Mr. Martin's property without Mr. Martin's consent or warrant and conducted a search.  Later that day, the Horse Protection Association of Florida ("HPAF") informed Mr. Martin that Mr. Richwine was in Florida investigating Martin Stables South.

On September 20, 2010, HPAF issued its independent investigation report that exonerated Mr. Martin from any wrongdoing at Martin Stables South.  Nevertheless, IHRC continued to publish allegations that Mr. Martin was responsible for various criminal acts of abuse and neglect of horses at Martin Stables South.  Mr. Martin was subsequently terminated from his positions at ITOBA.  IHRC has not closed its investigation into Mr. Martin nor has it released the remainder of the investigation records.

**B.      Procedural History**

Mr. Martin brought this suit against IHRC, Mr. Gorajec, Mr. Richwine, Ms. McNaught, Mr. Davis, Mr. Klopp, and Ms. Puccia alleging a conspiracy under 42 U.S.C. § 1985(3).  He also brought suit against Mr. Klopp, Mr. Davis, and Ms. Puccia for the state law claim of defamation. Mr. Martin brought various other claims against the IHRC and other defendants that are not at

issue for the purposes of this Entry.  Mr. Davis, Mr. Klopp, and Ms. Puccia seek dismissal of the § 1985 and state law defamation claims against them.

In response to Mr. Davis's and Mr. Klopp's joint motion, Mr. Martin filed an affidavit pursuant to Federal Rule of Civil Procedure 12(d), thus converting the motion to one for summary judgment.  Mr. Martin having filed this affidavit and stating such intent, *see* Dkt. 34 at 2, Mr. Davis and Mr. Klopp replied and conceded that their motion had been converted to a motion for summary judgment under Rule 12(d).[2]  Therefore, Mr. Davis's and Mr. Klopp's motion (Dkt. 13) will be treated as a motion for summary judgment and analyzed under the summary judgment standard.

Subsequent to the filing of Defendants' motions and Mr. Martin's responses to those motions, Mr. Martin requested leave to amend his Complaint (Dkt. 50).  He has since filed a motion to stay the proceedings under Rule 56(d) (Dkt. 70) in order to conduct additional discovery to adequately respond to Mr. Davis's and Mr. Klopp's motion for summary judgment and Ms. Puccia's motion to dismiss.

## II.  <u>LEGAL STANDARDS</u>

### A.    **Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court

---

[2] Federal Rule of Civil Procedure 12(d) states:  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

**B.      Motion to Dismiss**

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff.  *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted).  However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted).  To be facially *plausible*, the complaint must allow "the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

A 12(b)(2) motion to dismiss is a challenge to the court's jurisdiction over the person of the defendant which places the burden on the plaintiff to make a *prima facie* showing of jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 699 (7th Cir. 2010). "[W]here, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* Any conflicts in the facts must be resolved in favor of the non-moving party. *Id.*

## C.   Amending the Complaint

Federal Rule of Civil Procedure 15(a) provides that if a party is not entitled to amend a pleading as a matter of course, it may amend "with the opposing party's written consent or the court's leave." Courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002). "Leave may be denied due to delay, but the delay must unduly prejudice the opposing party." *Spolnik v. Guardian Life Ins. Co. of Am.*, 94 F. Supp. 2d 998, 1004 (S.D. Ind. 2000).

## D.   Rule 56(d) Motions

Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1)

7

defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order."[3]

> A party invoking its protections must do so in good faith by affirmatively demonstrating *why he cannot respond to a movant's affidavits* and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

*Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (quoting *Lamb's Patio Theatre v. Universal Film Exchs.*, 582 F.2d 1068, 1071 (7th Cir. 1978)) (emphasis added). A party seeking Rule 56(d)'s protection must make a good faith showing that it cannot respond to the movant's affidavits. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000). This requires an affidavit from the nonmovant identifying the material facts that it anticipates discovering. *See Grundstat v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999) (finding vague assertions that discovery would develop genuine issues of material fact insufficient to grant continuance).

## III.  DISCUSSION

### A.    Motion under Rule 56(d)

As an initial matter, the Court will address Mr. Martin's Rule 56(d) motion. Mr. Martin contends the Defendants have failed to carry their burdens in the motion for summary judgment and motion to dismiss. However, "out of an abundance of caution and in the event this Court finds that [Defendants] have carried such respective burdens, Mr. Martin moves this Court . . . to continue any hearing and/or ruling on the applicable motions for summary judgment and/or motions to dismiss, as the case may be." Dkt. 50 at 2. Mr. Martin cites case law that courts usually grant properly filed 56(d) motions as a matter of course. *See Miller v. Account Mgmt. Servs.*, No. 1:07-CV-00231, 2008 WL 596011, at *1 (N.D. Ind. Feb. 29, 2008) (citing *Doe v.*

---

[3] On December 1, 2010, the Federal Rules of Civil Procedure were amended. On that date, the current Rule 56(d) became effective. Prior to that date, the substance of current Rule 56(d) was contained in the former Rule 56(f). Many of the authority cited in this opinion pre-date the current Rule 56(d). However, the standards applied to Rule 56(f) apply in equal force to Rule 56(d).

*Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007); *Culwell v. City of Fort Worth*, 468 F.3d 868, 872 (5th Cir. 2006)).  However, the Court finds Mr. Martin's motion is not "properly filed."

Mr. Martin has already fully responded to and briefed Defendants' motions.  At no time during the response period did Mr. Martin request the Court for a stay to conduct discovery.  And although Mr. Martin was initially *pro se*, his attorney filed an appearance on June 15, 2012—less than one month after Mr. Davis's and Mr. Klopp's motion was filed.  Mr. Martin, then represented by counsel, requested—with good cause—and was granted, two extensions before responding to the motion.  Mr. Martin also requested and was granted an extension of time to respond to Ms. Puccia's motion.[4]  The important fact is that Mr. Martin did respond to these motions, and in the instance of Mr. Davis's and Mr. Klopp's motion, converted it to a motion for summary judgment by filing his own affidavit containing facts beyond the pleadings.

Mr. Martin argues that he has not been dilatory because there has been no discovery in this case, and he could not have foreseen that Mr. Davis, Mr. Klopp, and Ms. Puccia would fail to answer his Complaint and therefore stall discovery moving forward.  Yet this argument ignores that Mr. Martin should have requested this relief when it became apparent he could not adequately respond to the motions.  Instead, Mr. Martin chose to respond.

Therefore, the Court finds that Mr. Martin's Rule 56(d) motion, filed on October 29, 2012, is not "properly filed" as referred to by the Third and Fifth Circuits.  The Court will not allow Mr. Martin to stall these proceedings by essentially requesting another bite at the apple to establish facts that support his position, between two and three months after his initial responses have been filed.  *See Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) (finding that

---

[4] As an additional problem with Mr. Martin's motion as it relates to Ms. Puccia, she has not filed a motion for summary judgment, which is what Rule 56(d) is designed for.  However, even assuming that the rule applied, the Court would still deny the motion for the reasons explained in this Entry.

plaintiff should have filed a Rule 56(f) motion when it became clear that the parties' discovery dispute was not going to be resolved prior to the expiration of its extended deadline to respond to summary judgment).  Having **DENIED** Mr. Martin's Rule 56(d) motion (Dkt. 70), the Court moves on to address the remaining motions.

**B.      Motion to Amend the Complaint**

Mr. Martin moved to amend his Complaint on September 10, 2012, after he had responded to Mr. Davis's and Mr. Klopp's motion for summary judgment and Ms. Puccia's motion to dismiss.  Mr. Davis and Mr. Klopp contend that Mr. Martin's motion under Rule 15(a)(2), which allows amendments as justice requires, presents a novel issue:  "Does justice require a court to grant a plaintiff leave to amend his complaint after he has intentionally converted defendants' motion to dismiss into a motion for summary judgment under Rule 12(d)?"  Dkt. 56 at 3.  The Court agrees with Defendants that the answer must be "no."

Seventh Circuit case law advises that undue delay and prejudice occurs when a motion for leave to amend is filed "after discovery has been closed and a defendant's motion for summary judgment had been filed."  *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995).  This reasoning holds especially true when plaintiffs provide no explanation as to "why the amendment did not take place sooner, and where the delay in filing the motion to amend would cause delay and burden the parties."  *Id.* at 775.

Mr. Martin's lone explanation for requesting leave to amend is that his amendments would cure the deficiencies alleged by the motions to dismiss and will not prejudice Defendants on the merits.  However, this explanation does not explain to the Court why Mr. Martin chose first to fully brief each motion against him, as well as convert Mr. Davis's and Mr. Klopp's motion into one for summary judgment, and thereafter move to amend his complaint.  Mr.

Martin's tactics appear to be the hallmark of undue delay, which necessarily causes Defendants undue prejudice.  Rather than allow the Court to address the dispositive motions on the merits, Mr. Martin has filed two ancillary motions that have stalled the proceedings.  To allow Mr. Martin to amend his Complaint would essentially require the Court to deny the dispositive motions as moot, thus placing additional burdens on Defendants.  Mr. Martin cannot have another bite at the apple at the direct expense of Defendants who have actively defended this suit.  Therefore, Mr. Martin's motion for leave to amend his Complaint (Dkt. 50) is **DENIED**. The Court must now turn to the merits of the remaining motions before the Court.

### C.      Motion for Summary Judgment by Mr. Davis and Mr. Klopp

As has been discussed above, Mr. Davis and Mr. Klopp initially filed a motion to dismiss the § 1985(3) and state law defamation claims against them under Rule 12(b)(6) for failure to state a claim for relief.  Mr. Martin, in his response brief, addressed only the state law defamation claim and intentionally invoked Rules 12(d) and 56 and filed an affidavit containing facts outside the pleadings, thus converting the motion to a motion for summary judgment.  In reply, Mr. Davis and Mr. Klopp responded in kind, setting forth their statement of material facts not in dispute.  Mr. Martin did not request or file a surreply.

As an initial matter, Mr. Davis and Mr. Klopp assert that eight paragraphs of Mr. Martin's affidavit are insufficient for the purposes of opposing a motion for summary judgment. Rule 56(c)(4) requires that supporting affidavits used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  However, statements in affidavits made "upon information or belief" are "insufficient for the purposes of opposing a motion for summary judgment."  *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991).

Therefore, the statements made in paragraphs 5, 6, 8, 9. 11, 12, 19, and 20, which are made upon information and belief, cannot support a denial of summary judgment.[5]

### 1.    Defamation Claim

"To prevail on a cause of action for defamation, a plaintiff must prove four elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Newman v. Jewish Cmty. Ctr. Ass'n of Indianapolis, Inc*., 875 N.E.2d 729, 739 (Ind. Ct. App. 2007).   A communication is defamatory *per se* if it imputes criminal conduct.  *Id.*  However, a qualified privilege exists that "'applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.'"  *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)).

The defense of qualified privilege does not change the actionable quality of the words published, but rebuts the inference of malice that is otherwise imputed.  *Id.*  When asserting the qualified privilege, the defendant bears the burden of establishing the existence of a privileged occasion for the publication.  *Id.*  If the defense is established, the burden shifts to the plaintiff to show the privilege was abused.  *Id.*  To make such a showing, a plaintiff can show abuse wherein:  "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth."  *Id.* at 763–64.

---

[5] Mr. Davis and Mr. Klopp also argue that paragraph 21 contains conclusions of law as opposed to facts admissible in evidence.  *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (explaining that affidavits containing "[c]onclusory allegations, unsupported by specific facts," would not suffice" in defeating summary judgment).  In paragraph 21, Mr. Martin asserts that Defendants "did not act in good faith, did not act for the purpose of protecting any privileged common interest, acted primarily to further an interest that is not protected, and acted out of ill will and with recklessness."  Dkt. 35 at 4.  The Court will also not accept this paragraph of the affidavit as a fact supporting Mr. Martin's position.

### a.      Existence of Qualified Privilege

Mr. Martin alleges that Mr. Davis and Mr. Klopp defamed him when they forwarded the Puccia correspondence to Mr. Gorajec.  Mr. Davis and Mr. Klopp contend they have satisfied their burden of establishing the existence of the qualified privilege. The defamatory communication at issue occurred when, in a somewhat convoluted set of facts, Ms. Puccia—at the bequest of Mr. Gorajec—sent Mr. Davis and Mr. Klopp correspondence that contained allegations that Mr. Martin was abusing and neglecting horses at Martin Stables South.  Mr. Davis and Mr. Klopp then reported to the IHRC—in effect Mr. Gorajec—what they considered were suspected acts of criminal abuse and neglect of horses.  Mr. Davis and Mr. Klopp assert they were under a duty as licensed horse trainers to "report any known or suspected irregularities, any violation of the rules of the commission, or any wrongdoings by any person immediately to the commission and cooperate in subsequent investigations."  71 Ind. Admin. Code 5.5-1-29.  Thus, they were acting under a qualified privilege when they forwarded the Puccia correspondence to the IHRC.

Mr. Martin contends that based upon his "information and belief" neither Mr. Davis nor Mr. Klopp acted in good faith when they forwarded the Puccia correspondence.  Specifically, he argues that Mr. Davis and Mr. Klopp knew the Puccia correspondence was false and/or omitted material facts and analysis.  Mr. Martin also argues that because he was not licensed by the IHRC, Mr. Davis and Mr. Klopp were not under a duty to report his alleged wrongdoings to the IHRC.[6]  However, as discussed above, Mr. Martin cannot establish a genuine issue of material fact by asserting "facts" based solely on "information and belief."  He has not supported his allegation that Mr. Davis and Mr. Klopp knew the Puccia correspondence was false, and the

---

[6] The Court finds it irrelevant and unsupported by any facts in the record that Mr. Davis and Mr. Klopp failed to report suspected violations committed by another individual, as argued by Mr. Martin.

undisputed facts do not support Mr. Martin's position.  Moreover, there is no indication that the duty found in the Indiana Administrative Code is limited to reporting wrongdoing committed by other license-holders. The Court agrees with Mr. Davis and Mr. Klopp that given Mr. Martin's extensive involvement in Indiana horseracing, they "could reasonably believe he was a person about whom they had a duty to report suspected wrongdoing to the IHRC."  Dkt. 44 at 9 n.4.

The Court finds that there is no genuine issue of material fact and that Mr. Davis and Mr. Klopp acted in good faith when they forwarded the Puccia correspondence to the IHRC. Therefore, the qualified privilege is invoked and to defeat summary judgment, Mr. Martin must establish an abuse of the privilege.

### b.      Abuse of Qualified Privilege

An abuse of privilege occurs when the communication was motivated by ill will, excessive publication occurred, or the communication was made without grounds for belief in its truth.  *Williams*, 914 N.E.2d at 764.  Mr. Martin alleges that Mr. Davis and Mr. Klopp forwarded the Puccia correspondence to "unduly curry favor with IHRC in order to advance IHBPA's legislative agenda, to secure IHRC funding, and to drive membership away from ITOBA and to IHBPA." Dkt. 34 at 11.  Further, he alleges Mr. Davis and Mr. Klopp acted in retaliation against Mr. Martin and ITOBA.

Mr. Martin provides no facts to support his position.  While he states that he "reasonably believes the communications by [Mr. Davis and Mr. Klopp] to [ ] Mr. Gorajec at issue herein were made out of ill will," a reasonable belief does not establish a genuine issue of material fact. Moreover, Mr. Martin makes no argument that excessive publication occurred, nor has he established that the communication was made without grounds for belief in its truth.  Because

Mr. Martin makes only allegations that are unsupported by facts in the record, he has not established an abuse of the qualified privilege.

### 2. Conspiracy Claim under § 1985(3)

Mr. Martin failed to respond to Mr. Davis's and Mr. Klopp's motion regarding Mr. Martin's claim for conspiracy under § 1985(3). The Court will not scour the record on Mr. Martin's behalf. Therefore, Mr. Davis's and Mr. Klopp's motion for summary judgment (Dkt. 13) is **GRANTED** for both the defamation and § 1985 claims.

### D. Ms. Puccia's Motion to Dismiss

Ms. Puccia, a citizen of Florida, filed her motion to dismiss Mr. Martin's Complaint on the basis of personal jurisdiction. Mr. Martin alleges that Ms. Puccia sent a defamatory correspondence through email to Mr. Davis and Mr. Klopp, who were located in Indiana. There are no further allegations that connect Ms. Puccia to Indiana. In the alternative, Ms. Puccia argues that Mr. Martin's Complaint should be dismissed because it does not comply with Federal Rule of Civil Procedure 10(b) or is an impermissible shotgun pleading. She also submits an alternative motion for more definite statement under Rule 12(e). Finally, Ms. Puccia argues that Mr. Martin's claims under § 1985(3) and/or § 1983 and the state law defamation claim must fail under Rule 12(b)(6).

### 1. Personal Jurisdiction over Ms. Puccia

Determining whether jurisdiction over an out-of-state defendant is proper includes determining (1) whether the state's long-arm statute allows jurisdiction; and (2) whether assertion of personal jurisdiction violates due process. *Tamburo*, 601 F.3d at 701–02. Because Indiana's long-arm statute extends personal jurisdiction to the limits allowed under the U.S. Constitution, *see* Ind. Trial R. 4.4(A), the only question for the Court to determine is "whether

due process would be offended were [the Court] to exercise personal jurisdiction" over Ms. Puccia. *Am. Commercial Lines, LLC v. Northeast Maritime Inst., Inc.*, 588 F. Supp. 2d 935, 942 (S.D. Ind. 2008). Jurisdiction can be general or specific, and specific jurisdiction occurs when the suit arises out of or is related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Mr. Martin has made no true allegation of general jurisdiction; therefore the Court will proceed under specific jurisdiction.

"To support an exercise of specific jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction . . . ." *Tamburo*, 601 F.3d at 702. Specific personal jurisdiction is appropriate where "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* Here, Ms. Puccia does not specifically contest that Mr. Martin's alleged injury arises from her alleged forum-related activities. Thus, the Court finds that Mr. Martin has established as a prong of specific jurisdiction that Ms. Puccia's alleged forum-related activities caused his alleged injury in Indiana. Therefore, the issue in this case concerns whether Ms. Puccia "purposefully directed" her conduct at Indiana.

Here, the facts show that Mr. Gorajec requested that Ms. Puccia write and send an email to Mr. Davis and Mr. Klopp that contained reports that Mr. Martin was abusing and neglecting horses at Martin Stables South in Florida. It is undisputed that Ms. Puccia has not traveled to Indiana or had any other contacts aside from the April 7, 2010 email to Mr. Davis and Mr. Klopp. Ms. Puccia contends that the "mere sending of an e-mail to someone in Indiana cannot be considered a purposeful availment of the privilege of conducting business in Indiana nor an

activity directed at Indiana." Dkt. 26 at 5. She argues that her single email, which was sent upon request, is a random, fortuitous, and attenuated contact with Indiana. Dkt. 26 at 6 (citing *Burleson v. Toback*, 391 F. Supp. 401, 421–22 (M.D.N.C. 2005) (finding single email exchange that was unrelated to cause of action insufficient to confer personal jurisdiction)).

This issue requires the Court to apply the so-called "express aiming test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984).[7] In *Tamburo*, the Seventh Circuit instructs that in determining whether an action was expressly aimed at the forum state, courts should focus on the relationship between the allegedly tortious conduct and the forum state itself. 601 F.3d at 706. In other words, courts should determine if the forum state was the "focal point of the tort—at least with respect to the individual defendants." *Id.* In *Tamburo*, defendants, although acting from points outside the forum state, specifically aimed "blast" emails at plaintiff and his business in the forum state, "with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there." *Id.* The court held that "[t]ortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to satisfy *Calder*." *Id.* at 707. The forum state was a focal point of the tortious conduct.

The Court also finds *Hoffman v. Barnes*, No. 12 C 31, 2012 WL 1021837 (N.D. Ill. March 26, 2012) helpful. In *Hoffman*, defendant posted comments on internet forums to defame plaintiff. The primary question was whether defendant expressly aimed his comments at the

---

[7] To this point, Mr. Martin cites *Brockman v. Kravic*, 779 N.E.2d 1250 (Ind. Ct. App. 2002) for support. In *Brockman*, a case for defamation, defendant was contacted by a third party to provide counseling as part of an ongoing custody battle. Although the counseling was provided outside of Indiana, defendant sent a report of the counseling to an Indiana resident. More counseling sessions occurred by order of the court overseeing the custody battle, and more reports were sent to Indiana. *Id.* at 1258. The court found that while defendant did not initiate the relationship with Indiana, "he did have a purposeful contact with Indiana when he mailed the letters there and voluntarily inserted himself into the legal proceedings being conducted in Indiana by an Indiana court. Moreover, [he] was aware of the context into which he was offering his opinion." *Id.* at 1258–59. The operative facts that led the court to conclude specific jurisdiction existed, were that defendant knowingly became "embroiled in an essentially Indiana controversy," he was aware of the circumstances—the legal battle—when he wrote the letters, and was not an arms-length negotiation between parties. *Id.* at 1259. The Court finds *Brockman* persuasive, but will apply Seventh Circuit precedent as controlling.

17

forum state of Illinois.  *Id.* at *2.  The court discussed *Calder* and *Tamburo*, and explained that the Seventh Circuit requires a forum state injury and "something more" *directed at the forum state* before jurisdiction is proper.  *Id.* at *3.  In *Hoffman*, defendant's statements caused an injury in the forum state, but there was no targeting of the forum state, only a targeting of plaintiff who happened to reside in the forum state.  *Id.* at *4.  The forum state was not a focal point of the tortious conduct.

With these principles in mind, the Court makes the following observations.  Ms. Puccia was sought out by Mr. Gorajec and asked to send to Indiana the correspondence at issue.  The topic of the correspondence was Mr. Martin's business, which is located in Florida.  The result of the correspondence was an investigation into Mr. Martin's Florida business by IHRC, an Indiana agency.  At the time Ms. Puccia sent the correspondence, the investigation had not yet begun. Ms. Puccia has no other contacts with Indiana.  Significantly, the Court finds that Ms. Puccia cooperated with Mr. Gorajec and inserted herself into Indiana affairs.  She sent her correspondence to IHBPA leaders Mr. Davis and Mr. Klopp to report abuse and neglect that allegedly occurred in Florida.  While she did not initiate the correspondence, if Ms. Puccia did not want to insert herself into Indiana affairs, she could have declined and reported the behavior to Florida authorities.  Ms. Puccia also argues that the correspondence is unrelated to the subject of the current suit or claims—yet the correspondence served as an impetus for the investigation into Mr. Martin that is the heart of this dispute.  Therefore, the Court concludes that it has specific personal jurisdiction over Ms. Puccia.

Next, the Court must determine if exercising jurisdiction over Ms. Puccia would offend traditional notions of fair play and substantial justice.  *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945).  "The following

factors are relevant in making this determination: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Ms. Puccia argues the burden of defending this lawsuit in Indiana is great and that exercising jurisdiction will "be stifling in the current age and use of e-mail and text messaging." Dkt. 26 at 8. The Court disagrees that exercising jurisdiction over Ms. Puccia will set a precedent that "anyone sending an e-mail or text message may be subject to suit and personal jurisdiction in the state of the recipient." Dkt. 26 at 9. The analysis established by the Supreme Court and the Seventh Circuit, and undertaken by the Court in this Entry, belies her admonition. Furthermore, although Ms. Puccia will face "some burden in being forced to defend an action in another state, [ ] out-of-state defendants *always* face such a burden, and there is no suggestion that [Ms. Puccia's] hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents." *Felland*, 682 F.3d at 677.

Ms. Puccia also argues that Indiana does not have a significant interest in providing a forum for Mr. Martin's claim against her, because the correspondence is unrelated to the subject of the current suit or claims. The Court has already rejected this argument and finds it disingenuous given that the correspondence triggered the investigation at the heart of this dispute. Thus, "as is almost always the case," *id.*, Indiana has a strong interest in providing a forum for Mr. Martin to seek redress for torts committed against him in Indiana. Therefore, the Court finds that exercising personal jurisdiction over Ms. Puccia does not offend traditional

notions of fair play and substantial justice.  Therefore, Ms. Puccia's motion to dismiss based on a lack of personal jurisdiction is **DENIED**.

### 2.     Rule 10(b), Shotgun Pleading, and Rule 12(e).

The term "shotgun pleading" is used to describe complaints that utilize excessive incorporation, thereby taking advantage of Rule 10(b).  Rule 10(b) allows a party in a pleading to "refer by number to a paragraph in an earlier pleading."   "When a party indiscriminately incorporates assertions from one count to another, for example, by incorporating all facts or defenses from all previous counts into each successive count, it can result in an unnecessarily long and confusing pleading and counts that contain irrelevant facts or defenses, and it can prevent the opposing party from reasonably being able to prepare a response or simply make the burden of doing so more difficult."  5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1326 (3d. ed.).

Here, Mr. Martin's Complaint consists of 121 paragraphs.  The specific claim against Ms. Puccia begins at paragraph 116, in which Mr. Martin incorporates all of the previous 115 paragraphs—including all those that allege multiple counts against the other Defendants.  This is a classic example of shotgun pleading that is especially onerous to Ms. Puccia.  When faced with a shotgun pleading, an appropriate solution is to order a plaintiff to replead and state his claims more clearly.  The Court agrees with Ms. Puccia that Mr. Martin's Complaint lacks clarity and fails to comply with Rule 10(b).  However, there is enough clarity to determine that Mr. Martin has brought claims of defamation and §1985 conspiracy against Ms. Puccia, and in the interest of judicial economy, the Court will decide the motion to dismiss on the merits of those claims. Therefore, Ms. Puccia's motion to dismiss under Rule 10(b) and her motion for a more definite statement under Rule 12(e) are **DENIED**.

### 3.     Defamation and Qualified Privilege

Ms. Puccia contends that Mr. Martin's claim for defamation must be dismissed because her correspondence is protected by the doctrine of qualified privilege.  As explained above, the privilege "'applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.'"  *Williams*, 914 N.E.2d at 762 (quoting *Bals*, 600 N.E.2d at 1356).  The burden is on Ms. Puccia to first establish that the correspondence was privileged.

Ms. Puccia argues she sent the correspondence in good faith under a moral, legal, and social duty based on the shared interest in the health and welfare of horses.  The Complaint alleges that, "[a]t the request of Mr. Gorajec, Ms. Puccia sent written correspondence [ ] to [Mr. Davis and Mr. Klopp] alleging that Mr. Martin was responsible for various criminal acts of abuse and neglect of horses at Martin Stables South."  Dkt. 1 at 5.[8]  Taking this fact as true, the Court cannot find at this stage of the proceeding that Ms. Puccia sent the correspondence in good faith. She did not send the correspondence until asked by Mr. Gorajec.  This raises at least a question of whether the correspondence was sent because of a duty and shared interest, or for a malicious purpose.  Therefore, Ms. Puccia's motion to dismiss the defamation claim is **DENIED.**

### 4.     Conspiracy Claim under § 1985(3)

Ms. Puccia contends that Mr. Martin has not pleaded sufficient factual matters to state a claim for § 1985(3) conspiracy.  In doing so, she also incorporates by reference Section III.A of

---

[8] Mr. Martin, relying on his affidavit filed in connection with Mr. Davis's and Mr. Klopp's motion, argues that the correspondence "was false and/or omitted significant material facts and analysis that, if included, would have fundamentally changed the tenor and import of the communication."  Dkt. 46 at 7 (quoting Dkt. 35 at 2).  However, the Court found above that the paragraph quoted by Mr. Martin was not made upon personal knowledge and is not a "fact."  But more importantly the Court is deciding a motion to dismiss, not one for summary judgment where Mr. Martin can rely on matters outside of the pleadings.

Mr. Davis's and Mr. Klopp's original motion to dismiss to support her contention.  In Section III.A, Mr. Davis and Mr. Klopp argued that Mr. Martin's conspiracy claim must fail because there is no allegation of racial or class-based animus.  A proper claim under § 1985(3) must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to a person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002).  "The plaintiff must also show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirator's actions, and that the conspiracy aimed at interfering with rights that are protected against private, as well as official encroachment."  *Id.*  Mr. Martin's Complaint alleges that a conspiracy existed to prevent Mr. Martin from exercising his right to give support or advocacy in a legal matter.  The Complaint does not allege any class-based or racial animus, as required by § 1985(3).  Therefore, Ms. Puccia's motion to dismiss Mr. Martin's claim for § 1985(3) conspiracy is **GRANTED**.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court makes the following rulings:  Mr. Martin's Rule 56(d) motion (Dkt. 70) is **DENIED**; Mr. Martin's motion for leave to amend his Complaint (Dkt. 50) is **DENIED**; Mr. Davis's and Mr. Klopp's motion for summary judgment (Dkt. 13) is **GRANTED** for both Mr. Martin's defamation and § 1985 claims; Ms. Puccia's motion to dismiss (Dkt. 25) is **DENIED in part** and **GRANTED in part**.  Specifically, Ms. Puccia's motion to dismiss based on a lack of personal jurisdiction is **DENIED**; her motion to dismiss under Rule 10(b) and her motion for a more definite statement under Rule 12(e) are **DENIED**; her motion to dismiss the defamation claim is **DENIED**; and her motion to dismiss Mr. Martin's claim for § 1985(3) conspiracy is **GRANTED**.

The defamation claim against Defendants Davis and Klopp is therefore **DISMISSED with prejudice**. The claim for conspiracy under § 1985(3) against Defendants Davis, Klopp, and Puccia is **DISMISSED without prejudice**.

SO ORDERED.

Date: 01/28/2013   _____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael N. Red
michael.n.red@gmail.com

Betty D. Marion
KUBICKI DRAPER, P.A.
bdm@kubickidraper.com

David A. Arthur
OFFICE OF THE INDIANA ATTORNEY GENERAL
david.arthur@atg.in.gov

Steven C. Shockley
TAFT STETTINIUS & HOLLISTER LLP
sshockley@taftlaw.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP
tbetz@taftlaw.com